# Harner versus Fisher.

1. A creditor employed an agent to buy a horse of his debtor, as if for the agent himself; he gave the agent $10 to pay on account, and he was to promise to pay the balance in a few days; by understanding between the agent and principal, he was to pay by handing over the claim of the creditor—but nothing was to be said of the claim when buying the horse. The agent acted as instructed, received the horse, delivered it to the creditor, and shortly afterwards offered the claim in payment, which the debtor refused. Held, that the transaction was a fraud; that no title to the horse passed, and the debtor could recover in replevin.

2. Smith v. Murphy, 9 Harris 367, remarked on.

3. A vendor may intend to part with his property as on a sale, and still may pursue and recover it on the ground that his assent was obtained by fraud.

4. The effect of fraud is to destroy a contract, come in what shape it may.

May 8th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of Adams county: Of May Term 1868, No. 59.

This was an action of replevin for a mare, brought to August Term 1866, by Edwin F. Fisher against Sylvester Harner. The defendant pleaded property.

On the trial before Fisher, P. J., the plaintiff called John Shorb, who testified: Harner employed him to buy the mare in suit from Fisher. Witness told Fisher he was buying for himself; Harner gave him $10 to pay on the mare, the balance to be paid

[Harner *v.* Fisher.]

by handing a claim Harner had against Fisher; he was not to say anything about the claim when buying the horse; he was to tell Fisher the balance would be paid on Monday; witness bought the mare for $95, paid $10 of the price, and said to Fisher he would pay the balance on Monday. Fisher gave witness the mare on Thursday; on Monday he delivered her to Harner, who gave him a claim of $96.50, which he held against Fisher. Witness took the claim to Fisher on Monday. Fisher would not accept it. In the evening Fisher tendered witness the $10, and demanded the mare; witness refused to take the money and deliver the mare; told him the money was Harner's; he must give it to him. Harner had the mare; witness had nothing more to do with it. Witness's contract with Fisher was to pay $85 on Monday, or give a note, with security. The plaintiff then proposed to ask witness whether in the conversation with Fisher at the time he bargained for the mare, he did or did not tell him that the witness was getting money from John G. Byers, the man he lived with, and that Byers expected to get the money from Bowersox; also, as part of the conversation in relation to the sale of the mare, whether or not "he did not tell plaintiff that he wanted to have a riding pony," and also, whether Harner had told him that he should make out that Byers would not let him have his horses, and that Harner said I should say this so that I could get the mare.

Both offers were objected to, admitted by the court, and several bills of exception sealed.

The witness answered these questions substantially in the affirmative, and added that he had no recollection that Harner had told him to say so in order to get the mare.

The plaintiff requested the court to instruct the jury:—

1. Fraud vitiates all contracts, and if the jury believe that defendant procured Shorb to make such misrepresentations to the plaintiff as to obtain through him possession of the mare in question, such contract is void and plaintiff is entitled to recover.

2. If the jury believe the testimony of Shorb, plaintiff is entitled to recover.

The court answered these points as follows:—

1. "Fraud vitiates all contracts, and if the jury believe that there was a fraudulent combination between Shorb, the witness, and Harner, the defendant, to obtain the possession of the mare in question by falsehood or by false representations, and that deceit, falsehood and fraud were used to obtain it, and that it was obtained in this way, then the pretended contract of sale is void and the plaintiff is entitled to recover."

2. "This is correct, if the jury believe that it proves that there was a combination to obtain the mare in question by falsehood and deceit, and by false representations, and that it was thus obtained."

[Harner *v.* Fisher.]

The defendant's 2d, 3d and 4th points were:—

2. If the plaintiff had a right to rescind the contract entered into with Shorb, he could only do so upon tendering a return of the money received, and after being informed that Shorb was the agent of Harner, and the money paid belonged to Harner, and that Shorb had nothing more to do with it, the plaintiff was bound to tender the money to Harner and demand a return of the property from him before bringing suit, and having failed to do so, he cannot recover in this action.

3. If the plaintiff sold the mare to Shorb, and received $10 of the purchase-money, gave him time for the balance, and delivered the mare to him under this contract, the property in the animal was changed, and his remedy is on the contract against either Shorb or Harner, as he may elect.

4. If the defendant employed Shorb to purchase the mare from Fisher for the purpose of procuring the settlement by him of an honest claim, such arrangement was not fraudulent in law, although Shorb may have represented that he was buying the animal for himself; the remedy of the plaintiff is upon the contract against Shorb or Harner, as he may elect, and he cannot treat the contract as void, nor recover in this suit.

The court answered these points as follows:—

2. "If the plaintiff desired and had the power to rescind the contract, this would be correct if the defendant alone had contracted with plaintiff, and the contract was fair and not made by reason of the defendant's false pretences and fraudulent conduct. But if the defendant employed Shorb to act as he says he did, and combined with him to obtain the mare under false pretences, then it is not correct, and the tender and demand was properly made upon Shorb, if one was made."

3. "This point is correct, if the contract was a mere buying and selling in the ordinary way. The plaintiff would then be put to his action on the contract. But the contract must be fair and honest on the part of the defendant, without fraud or deceit practised by the defendant or his agent Shorb. But if the mare was obtained by a fraudulent combination between Shorb and the defendant, and effected by means of false pretences, the point is not correct."

4. "This would be correct if the contract was fairly and honestly made. But if there was a contrivance and combination between Shorb and Harner to get the mare under fraudulent pretences, it would not be correct."

In the general charge the court said:—" Does this testimony prove to you that the possession of the mare was obtained by false pretences? Would Fisher have disposed of her on the terms he did if he had known the manner he was to be dealt with? and was he entrapped to deliver his mare under false pretences? Was

[Harner v. Fisher.]

there a combination between the witness and the defendant to de-
ceive the plaintiff by false representations, and thus obtain the
possession of the mare ?   If there was, the plaintiff is entitled to
recover ?"

The verdict was for the plaintiff for $91.

The defendant took a writ of error, and assigned for error :—

1. Admitting the testimony in the two bills of exception.

2. The portion of the charge given above.

3 and 4. The answers to the plaintiff's points.

5, 6 and 7. The answers to the defendant's points.

*R. G. McCreary*, for plaintiff in error.—No principle of law
requires a man to state truly his motives and inducements for the
contract: Vernon *v.* Keys, 12 East 632.   An agent dealing in
his own name is personally responsible to the vendor, and is not
obliged to disclose his principal: Matthews *v.* Bliss, 22 Pick. 48;
Fox *v.* Mackreth, 2 Bro. C. C. 420; Turner *v.* Harvey, Jacobs
178.   The intention not to pay, and concealed insolvency of the
purchaser, will not avoid a contract: Smith *v.* Murphy, 9 *Harris*
367; Robertson *v.* Robertson, 9 Watts 34; Ferett *v.* Hill, 15
C. B. 207.   The misrepresentation must be of something mate-
rial: 1 Story's Eq. § 195, 203; Phillips *v.* Duke of Bucks, 1 Vern.
227; 1 Fonb. Eq. b. 1, ch. 2, § 8; Bright's Eq. § 58; Neville *v.*
Wilkinson, 1 Bro. Ch. Rep. 546; Crittenden *v.* Craig, 2 Bibb
474.   The plaintiff should have tendered the money to Harner,
as the sale was voidable only: Rowly *v.* Bigelow, 12 Pick. 307;
White *v.* Garden, 10 C. B. 919; Thompson *v.* Lee, 3 W. & S.
479.

*M. & W. McClean*, for defendant in error.—There was misre-
presentation of facts which is fraud and makes the contract *void*:
Cochran *v.* Cummings, 4 Dall. 250; Chamberlin *v.* McClurg, 8 W.
& S. 36; Jackson *v.* Summerville, 1 Harris 359; Smith *v.* Murphy,
*supra*; 1 Story's Eq. §§ 186, 187; 2 Kent's Com. 618, 621; 2
Pars. on Cont. 267; Fox *v.* Mackreth, Matthews *v.* Bliss, Ver-
non *v.* Keys, Ferett *v.* Hill, White *v.* Gordon, Thompson *v.*
Lee, *supra*.   Great latitude of evidence is allowed in questions of
fraud: Stauffer *v.* Young, 3 Wright 455; Deakers *v.* Temple,
5 Id. 242; Green *v.* Humphry, 14 Id. 212.   The tender to
Shorb was sufficient: Story on Agency, § 103, a.

The opinion of the court was delivered, May 14th 1868, by

THOMPSON, C. J.—The case in hand is not of the class in which
attempts have sometimes been made to rescind contracts solely on
the ground of a failure to disclose the circumstances of a contract-
ing party; for instance, the insolvency of the buyer who knows
himself insolvent and not able to pay what he promises.   There
are cases both ways in our books, as to the sufficiency of this as

[Harner v. Fisher.]

a ground of rescission, enabling the vendor to proceed for the recovery of his property in specie: Mackinley v. McGregor, 3 Wh. 369, is strictly of this nature. But Smith v. Murphy, 9 Harris 367, disapproves this rule, and seems to require circumvention and artifice; active fraud; in other words, the "lie with circumstances," to have the effect. It does not deny that a vendor may intend to part with property as on a sale, and still may pursue and recover it on the ground that his assent was obtained by fraud, which being nullified by the fraud, there having been no assent, the title remains. Fraud nullifies everything tainted by it. We have held recently that the sale and delivery of a horse was void, because the money received as good was counterfeit: 14 Wright 212. That is no new doctrine. It is a case, however, of a rescission of a contract, executed in form, but void for fraud.

There is no difference in the eye of the law as to the effect of the fraud, on account of the difference in its manifestation. The effect is the destruction of the contract, come in whatever shape it may.

The case in hand was a case of fraud by concoction and combination or conspiracy. The testimony presented only this feature, and the whole burthen of the charge of the learned judge to the jury was, "that if there was a fraudulent combination between Shorb and the defendant to obtain the possession of the mare in question, by falsehood or by false representations, and that deceit, falsehood and fraud were used to obtain her, and that she was obtained in this way, then the pretended contract of sale is void, and the plaintiff is entitled to recover." This was an unexceptionable answer to plaintiff's points, according to Smith v. Murphy and other cases. The defendant's points were all answered properly in their abstract propositions, but qualified by a reference to the contingency of the alleged fraud existing. This was proper. Any other course would have lost sight of the true point in issue, namely, whether the testimony established that the plaintiff was deceived and defrauded into parting with his property by the falsehood and deceit of the defendant and his coadjutor Shorb. The testimony of the latter showed that all he did and said in his agency to procure the possession of the mare, was pre-arranged, and was in every particular false. The poor excuse attempted, that the defendant took this method to secure some claim he alleged he had against Fisher, is not supported by anything in the case. But the same excuse might with the same plausibility have been urged if he had taken the beast by force or in the night time. A creditor has no more right to defraud his debtor into parting with his property for his benefit, than anybody else; and the latter is as well entitled to the privilege of assenting to the disposition of it when it is not taken by law, as other per-

sons. The morality of the defendant, however, it would seem, did not come up to this; but this may be a lesson. If he is caught in his own trap, he alone is to blame. In no part of the charge do we discover anything to correct, in view of the case as presented in the testimony.

There was no error in admitting Shorb to testify. He was the defendant's agent, and he could not object to his disclosure of the instructions under which he acted, and what he did in pursuance of them. I do not see that he went beyond them, and if he did, and his conduct was more fraudulent than it was intended to be, the principal could not derive any benefit therefrom. No doubt, in most cases of fraudulent purchases of personal property, an innocent purchaser without notice and for value, from the fraudulent vendee, would be protected; but while this has been discussed in the argument at bar, it is in the light of the evidence, a mere abstraction, and need not be further discussed in this opinion.

There being no error in the record, the judgment is affirmed.