# Reed, Appellant, *v.* Felmlee.

*Sale—Payment—Intention—Fraud—Rescission.*

An intention even of an insolvent buyer at the time of the purchase not to pay will not amount to fraud, unless some false representation, trick or artifice, or conduct which involves a false representation, be added. A fortiori, proof of a bare intention not to pay without proof of insolvency will not avoid the sale.

Argued March 8, 1904. Appeal, No. 2, Feb. T., 1904, by plaintiff, from judgment of C. P. Clinton Co., Jan. T., 1898, No. 187, on verdict for defendant in case of William A. Reed v. O. F. Felmlee. Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ. Affirmed.

Replevin for a buggy. Before Mayer, P. J.

The opinion of the Superior Court states the case.

Plaintiffs presented the following points :

1. That if they believe, as testified by W. A. Reed, that he did not sell the buggy to Guy Reed, but gave it to him for the purpose of allowing him to try the buggy with a view of purchasing it, then no title passed to Guy Reed, and the alleged sale by him to Felmlee did not pass any title, and the plaintiff. is entitled to recover the value the jury may place upon the buggy. *Answer:* We have already so instructed you. If the buggy was merely loaned, no title would pass. If it was sold, then title did pass. [1]

2. That if they believe, from the evidence, that Guy Reed, knowing that the board bill of W. A. Reed was paid, went to W. A. Reed's shop and received the possession of the buggy without any arrangement as to the payment of the consideration money, and took the buggy away with intent to appropriate it to his own use, or to sell it and not pay for it, then the obtaining of the buggy was a fraud upon W. A. Reed and no title passed to Guy Reed. *Answer :* We refuse that point. [2]

3. That if the jury believe, from the evidence, that Guy Reed, at the time he obtained possession of the buggy, believed that W. A. Reed was indebted to Carrie W. Reed for board, and obtained possession of the buggy with intent either not to

pay for it at all or to apply the alleged board money unpaid on the purchase money of the buggy, without any agreement with W. A. Reed to that effect, he was guilty of such fraudulent conduct as avoids his title, and plaintiff may recover. *Answer:* We refuse that point. [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*C. S. McCormick*, for appellant.

*W. C. Kress*, for appellee.

OPINION BY RICE, P. J., April 18, 1904:

This was an action of replevin for a buggy, which, according to the defendant's allegations, the plaintiff sold and delivered to Guy Reed for $70.00 and the latter sold to the defendant. The plaintiff, on the other hand, contended that he did not sell the buggy to Guy Reed, but only delivered it to him on trial with a view to a possible sale. The testimony was conflicting, and in his general charge the learned judge submitted the question to the jury with appropriate instructions to which no exceptions have been taken. He was strictly accurate in saying in answer to plaintiff's first point that he had already instructed the jury as requested in the point. Nor was it misleading or even inappropriate for him to say in that connection that the question for them to determine was whether the buggy was sold or was " merely loaned " to Guy Reed. The jury could not have failed to understand from the instructions as a connected whole, that, if they found that the plaintiff did not sell the buggy to Guy Reed, but gave it to him simply for the purpose of allowing him to try it with a view of purchasing it, then no title passed to Guy Reed, the alleged sale by him to Felmlee did not pass any title and the plaintiff would be entitled to recover. Their verdict having established the fact that the transaction was a sale, the question arises whether, if Guy Reed bought the buggy with the intention not to pay the agreed price, or with the preconceived design to apply upon the price an alleged indebtedness from the plaintiff to the purchaser's wife—the fact of such indebt-

edness being disputed by the plaintiff—this was a fraud which entitled the plaintiff to rescind the sale and reclaim possession of the buggy. This question must be answered in the negative under the authority of Smith v. Smith, 21 Pa. 367, and the cases that follow in its lead. " An intention not to pay, " said LOWRIE, J., " is dishonest, but it is not fraudulent: Robertson v. Robertson, 9 Watts, 32; Lupin v. Marie, 6 Wend. 77. The law provides an action on the contract as the remedy for just such dishonesty. And it is no more fraudulent to have such an intention at the time of the purchase than at the time when payment ought to be made. Such intention by itself is disregarded by the law, for it can be set aside by the usual contract remedies." The doctrine of this case as to a purchase by one knowing himself to be insolvent and intending not to pay, was severely criticised in Bughman v. Central Bank, 159 Pa. 94; nevertheless the case was declared to be authoritative for what was actually decided in it. So that we may regard it as settled law in Pennsylvania, that an intention even of an insolvent buyer at the time of the purchase not to pay will not amount to fraud, unless some false representation, trick or artifice, or conduct which involves a false representation, be added. A fortiori, proof of a bare intention not to pay without proof of insolvency will not avoid the sale. The case of Harner v. Fisher, 58 Pa. 453, is not in conflict with the foregoing conclusion, nor is it parallel with this case. There a creditor employed an agent to buy a mare from the debtor as if for himself, but with the prearranged scheme to pay for it with the creditor's claim. " The testimony of the latter (the agent) showed that all he did and said in his agency to procure the possession of the mare was prearranged and was in every particular false." Actual misrepresentation amounting to deceit entered into the transaction. There was a fraudulent combination or conspiracy between the creditor and his agent to obtain for the former property, which in all probability he could not have obtained, if the seller had not been induced by these false statements to believe that the agent was acting for himself. The case is plainly distinguishable from the present.

All the assignments of error are overruled and the judgment is affirmed.